```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
```
_____

In re:
                                              CASE NO. 08-21242
LARRY M. LATIMER and
HARRIET C. LATIMER,

                    Debtors.      DECISION & ORDER

_____

## BACKGROUND

On May 22, 2008, Larry M. Latimer and Harriet C. Latimer (the "Debtors") filed a petition initiating a Chapter 13 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtors indicated that they owned a residence at 5716 Dacola Shores Road, Conesus, New York (the "Dacola Shores Road Property"), which had a fair market value of $80,000.00 and was encumbered by: (1) a first mortgage in favor of Coldwell Banker/PHH Mortgage (the "Coldwell Mortgage"), with a current balance of approximately $77,000.00; and (2) a second mortgage in favor of State Farm Bank, FSB (the "State Farm Bank Mortgage"), with a current balance of approximately $10,200.00.

On August 13, 2008, after filing a series of plans treating the State Farm Bank Mortgage as fully secured, the Debtors filed an Amended Chapter 13 plan (the "Plan"), which proposed to bifurcate the State Farm Bank Mortgage into an allowed secured claim in the amount of $222.25, to be paid together with interest at seven

**BK. 08-21242**

percent (7%) per annum by monthly payments of $20.00, and an unsecured claim in the amount of $10,173.07.

In furtherance of the Plan, on August 13, 2008, the Debtors filed a Motion (the "Valuation Motion"), pursuant to Section 506(a)(1)[1], for the Court to determine the secured status of the State Farm Bank Mortgage. The Valuation Motion asserted that: (1) the Dacola Shores Road Property had a fair market value of $80,000.00; (2) pursuant to a proof of claim filed in the Debtor's Chapter 13 case, the Coldwell Mortgage had a balance due of $79,777.75, leaving a secured value of $222.25 remaining for the State Farm Bank Mortgage; (3) the State Farm Bank Mortgage matured on May 15, 2010, which was before the final payment under the Debtor's five-year Plan would be due; (4) Section 1322(c)(2)[2]

---

[1]   Section 506(a)(1) provides that:

  (a)
     (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506 (2008).

[2]   Section 1322(c)(2) provides that:

  (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

**Page 2**

**BK. 08-21242**

permitted a Chapter 13 plan to modify a mortgage, like the State Farm Bank Mortgage, that is secured solely by a debtor's residence, pursuant to the provisions of Section 1325(a)(5)(B)[3], which

---

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325 (a)(5) of this title.

11 U.S.C. § 1322 (2008).

[3]   Section 1325(a)(5) provides that:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

    (5) with respect to each allowed secured claim provided for by the plan—

        (B)  (i) the plan provides that—

            (I) the holder of such claim retain the lien securing such claim until the earlier of—

                (aa) the payment of the underlying debt determined under nonbankruptcy law; or

                (bb) discharge under section 1328; and

            (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

        (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

        (iii) if—

        (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

        (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to

**Page 3**

includes the ability to modify a claim into an allowed secured claim, based upon a valuation determination pursuant to Section 506(a)(1), and a remaining unsecured claim; and (5) the Court, pursuant to Section 506(a)(1), should determine that State Farm Bank, FSB had an allowed secured claim for its Mortgage of $222.25, and a remaining unsecured claim of $10,173.07.

On September 10, 2008, State Farm Bank, FSB interposed opposition to the Valuation Motion, which: (1) correctly asserted that, in accordance with the decision of the United States Court of Appeals for the Second Circuit in *In re Pond*, 252 F.3d 122 (2d Cir. 2001) ("*Pond*"), its mortgage claim and lien on the debtor's residence could not be bifurcated into an allowed secured and an unsecured claim; but (2) failed to address the Debtor's assertion in the Valuation Motion that such a bifurcation was specifically permitted by the provisions of Sections 1322(c)(2) and 1325(a)(5).

On October 7, 2008, the Debtors filed a Memorandum of Law which asserted that: (1) with the exception of a single Circuit Court decision, *In re Witt*, 113 F.3d 508 (4th Cir. 1997) ("*Witt*"), every other Federal Court that has addressed the issue of whether Section 1322(c)(2) in conjunction with the modification provisions

---

provide to the holder of such claim adequate
protection during the period of the plan[.]

11 U.S.C. § 1325 (2008).

**Page 4**

of Section 1325(a)(5) permitted the bifurcation of an undersecured mortgage that becomes due prior to the final payment due under a Chapter 13 plan, including *In re Paschen*, 296 F.3d 1203 (11th Cir. 2002) ("*Paschen*") and *In re Eubanks*, 219 B.R. 468 (BAP 6th Cir. 1998) ("*Eubanks*"), have found that those Sections do permit the Debtor's proposed bifurcation and modification; and (2) the fundamental difference between the *Witt* and *Paschen* decisions is that the Court in *Witt* found that Section 1322(c)(2) only provides for the modification of the payment of the full mortgage claim, whereas the Court in *Paschen* found that the subsection permits all of the modifications of a claim permitted by Section 1325(a)(5), including the ability to modify the mortgage claim by bifurcating it into an allowed secured claim and an unsecured claim.

On October 8, 2008, State Farm Bank, FSB filed a Memorandum of Law which essentially asserted that the Court should follow the reasoning set forth in *Witt*.

## **DISCUSSION**

This Court (the Bankruptcy Court for the Western District of New York, Rochester Division) finds that, for the reasons set forth in the decisions in *Paschen* and *Eubanks*, the claim of the holder of a mortgage secured solely by a debtor's residence (a "Home Mortgage"), when the mortgage claim is undersecured and is due in

**Page 5**

**BK. 08-21242**

full at the time of the filing of the petition or becomes due by its terms during a debtor's Chapter 13 plan, can be modified, including by being bifurcated into an allowed secured and a remaining unsecured claim, in accordance with the provisions of Sections 1322(c)(2) and 1325(a)(5), and for the following additional reasons:

1. Although this Court is persuaded by the *Paschen* and *Eubanks* decisions, the decision in *Witt* is not unreasonable for the following reasons:

   A. The language of Section 1322(c)(2) is in fact ambiguous. Prior to the filing of the Valuation Motion and the Memorandum of Law filed by each of the parties, the Chapter 13 Trustee for the Rochester Division read Section 1322(c)(2) as permitting the payment in full of such a qualifying Home Mortgage over the term of a debtor's Chapter 13 plan, together with interest set by the Court, pursuant to the provisions of Section 1325(a)(5)(B)(ii). This became a requirement for confirmation in the Rochester Division, although it was not a frequent occurrence.[4] This practice was consistent

---

[4] This Court does not know whether any of those qualifying Home Mortgages were undersecured, or whether potential debtors with undersecured qualifying Home Mortgages may never have filed a Chapter 13 case because of this requirement.

**Page 6**

      with the decision in *Witt*, but not made with reference to *Witt*.

  B.  Notwithstanding the discussions in *Paschen* and *Eubank*s of the legislative history dealing with the possible treatment of wholly unsecured and undersecured Home Mortgages, the legislation was not enacted. The reality is that Congress has never, with the exception of Section 1322(c)(2), enacted legislation dealing directly with the modification of wholly unsecured or undersecured Home Mortgages. This has resulted in a body of judicial law with respect to wholly unsecured Home Mortgages being developed by the Courts in decisions such as *Pond*.[5] The legislative history to Section 1322(c)(2) indicates that it was enacted to overrule First National Fidelity Corp. v. Perry, 945 F.2d 61 (3rd Cir. 1991) ("*Perry*"), which would not permit a Home Mortgage, as now described in Section 1322(c)(2), to be paid in full in the Plan. As a result, it was not unreasonable for the *Witt* Court to determine that Section 1322(c)(2) was not intended to

---

[5] If the State Farm Bank Mortgage was wholly unsecured, it could have been avoided under Section 506(a)(1) in accordance with the decision of the Second Circuit in *Pond*.

**Page 7**

Document      Page 7 of 9

       allow the modification of a qualifying Home Mortgage beyond allowing it to be paid in full in the Plan.[6]

2. Notwithstanding the reasonableness of the *Witt* decision, as discussed above, in enacting Section 1322(c)(2) Congress chose to refer only to Section 1325(a)(5). In Chapter 13 reorganization cases, the modification of a secured claim other than a Home Mortgage claim under Section 1325(a)(5) into an allowed secured claim and a remaining unsecured claim, if applicable, is fundamental to the treatment of a secured creditor. It promotes the important policy of equality of distribution. When Congress referred specifically in Section 1322(c)(2) to the modification of certain Home Mortgage claims under Section 1325(a)(5), it was clearly aware of this important ability to modify a secured claim. Had Congress intended only to permit the modification of the payment terms of a Home Mortgage, it could have either stated that much more clearly, or have referred to modification specifically pursuant to Section 1325(a)(5)(B)(ii).

3. The most compelling reason for this Court to follow the *Paschen* and *Eubank*s decisions is that Congress, in its 2005 major revision of the Bankruptcy Code, once again failed to

---

[6] It appears that the Home Mortgage in *Perry* was fully secured, so no inference can be drawn as to the treatment of an undersecured mortgage.

**Page 8**

**BK. 08-21242**

deal directly with wholly unsecured or undersecured Home Mortgages, indicating that the decisions in cases like *Pond*, *Paschen* and *Eubank*s were correct. It enacted legislation to overrule *Perry* in its 1994 major revision to the Bankruptcy Code, but it chose not to overrule *Paschen* and *Eubanks* in its 2005 major revision.

## CONCLUSION

Pursuant to Section 506, the claim of State Farm Bank, FSB is bifurcated into an allowed secured claim of $222.25 and an unsecured claim of $10,173.07, to be paid as proposed in the Plan.

**IT IS SO ORDERED.**

_____/s/_____
**HON. JOHN C. NINFO, II**
**U.S. BANKRUPTCY JUDGE**

**Dated: October 27, 2008**

Page 9